IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN BROTHERS, INC.,<br>an Illinois corporation | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| | ) | No. 06 C 1269 |
| v. | )<br>) | Wayne R. Andersen |
| AB FOODS LLC, an Idaho limited<br>liability company, | )<br>)<br>) | District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Allen Brothers, Inc. ("Allen Brothers") brought this action against defendant AB Foods LLC ("AB Foods") alleging that Allen Brothers has trademark rights in the mark "AB" and that AB Foods' use of that mark violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as Illinois common law. This matter is currently before the court on AB Foods' motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

## BACKGROUND

This dispute centers on the letters "AB." Plaintiff Allen Brothers, an Illinois corporation with its corporate headquarters in Chicago, Illinois, furnishes high-quality, gourmet meat products to restaurants and to individual consumers. Founded in 1893, Allen Brothers has expanded into a nationwide business with annual sales in excess of $75 million and has been featured in advertisements in several local and national magazines, newspapers, and radio shows. To facilitate its business, Allen Brothers mails millions of full-color, consumer catalogs each

year and operates Web sites located at "allenbrothers.com" and "absteaks.com," though the domain name "absteaks.com" redirects consumers to an Allen Brothers Web site where the words "Allen Brothers" are predominantly on display. Allen Brothers contends in this lawsuit that it began using a mark consisting of the letters "AB" in 1983 and that since that time it has used that mark continuously and exclusively in its catalogs, marketing materials, and radio advertisements, as well as on its shipping materials and Web sites.

Defendant AB Foods is an Idaho limited liability company and a wholly-owned and managed subsidiary of Agri Beef, Co. ("Agri Beef"), an Idaho corporation with its corporate headquarters in Boise, Idaho. Founded in 1968, Agri Beef functions as a vertically-integrated beef producer involved in breeding, ranching, cattle feeding, beef processing, product marketing, and product sales. Agri Beef has used a symbol consisting of the letters "AB" as its trademark since the mid 1970s. In 2006, Agri Beef reorganized its corporate structure and created wholly-owned subsidiaries including, among others, AB Foods. AB Foods is now responsible for the production, marketing, and sales of beef and beef-related products for Agri Beef. In that role, AB Foods markets and sells its beef products to restaurants and intends to expand its business and sell its products to individual consumers. As part of Agri Beef's reorganization, Agri Beef licensed its "AB" mark to AB Foods.

Allen Brothers filed its two-count complaint on March 8, 2006, alleging that AB Foods' unauthorized use of "AB" in connection with the sale of meat products to restaurants and individual consumers violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count One), as well as Illinois common law relating to trademark infringement and unfair competition (Count Two). Although Allen Brothers has no federally registered trademark rights in "AB,"

Allen Brothers alleges in its complaint that it has acquired common law trademark rights in the mark through its "continuous and extensive" use of "AB" in connection with its sales of meat products to restaurants and individual consumers. AB Foods now moves for summary judgment on both counts.

## DISCUSSION

A.  *Legal Standard*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the nonmoving party must present definite, competent evidence to rebut the summary judgment motion. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). The court considers the evidence in a light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

B.  *Trademark Infringement and Related Claims*

The analysis of Allen Brothers' common law claim will track that of the Lanham Act claim. *See Rust Env't & Infrastructure v. Teunissen*, 131 F.3d 1210, 1219 (7th Cir. 1997) (finding that the plaintiff could not prevail on a state law claim of unfair competition if there was

3

no likelihood of confusion); *World Impressions, Inc. v. McDonald's Corp*, 235 F. Supp. 2d 831, 841 (N.D. Ill. 2002) (finding that common law trademark infringement and unfair competition claims are resolved in the same manner as Lanham Act claims). Therefore, we will focus on Allen Brothers' Lanham Act claim. To prove a violation of section 43(a) of the Lanham Act, Allen Brothers must prove (1) that it had trademark rights in "AB" before AB Foods' began using the allegedly infringing mark, and (2) that AB Foods' use of "AB" would likely cause confusion among consumers in the marketplace about the identity or source of AB Foods' products. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999).

We will focus on the second factor as it is dispositive of Allen Brothers' claims. Although likelihood of confusion is a question of fact, the issue may be resolved on summary judgment when the evidence is "so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996) (affirming summary judgment for the defendant where there was "no reasonable likelihood that any significant number of consumers could mistake the defendant for the plaintiff"). Thus, in order to survive summary judgment, Allen Brothers must produce evidence that, if believed by a trier of fact, would show that consumers are likely to be confused as to the source of AB Foods' products. *Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004). Courts in this circuit consider seven factors to determine whether there is a likelihood of confusion: (1) similarity of the marks; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the complainant's mark; (6) evidence of actual confusion; and (7) intent of the defendant to palm off his product as that of another. *Int'l*

*Kennel Club of Chi. v. Mighty Star, Inc.*, 846 F.2d 1079, 1087 (7th Cir. 1988). "None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *Id.* The court, therefore, will begin its analysis by examining these factors.

    1.    Similarity of the Marks

In comparing two marks to determine their similarity, courts must make the comparison "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sullivan,* 385 F.3d at 777. This is because the consuming public is unlikely ever to be presented with the opportunity for such side-by-side comparison. *Int'l Kennel*, 846 F.2d at 1088. For this factor to lean in favor of likelihood of confusion, "[t]he marks must be so similar that it is likely or probable, not just possible, that consumers, when presented with the marks singly, rather than side-by-side, would confuse" them. *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 355 (7th Cir. 1983).

We find that this factor leans in favor of no likelihood of confusion. First, although both Allen Brothers and AB Foods use "AB" as part of their respective marks, the evidence demonstrates that Allen Brothers' "AB" mark is almost always accompanied by the words "Allen Brothers." For example, Allen Brothers almost always uses "AB" in conjunction with "Allen Brothers" in its catalogs, marketing materials, and on shipping materials. Further, when Allen Brothers uses "AB" in its Internet domain names—such as "www.absteaks.com"—the consumer is directed to Allen Brothers' main Web site where the words "Allen Brothers" are predominant on the page. Thus, even if "AB" is the dominant portion of Allen Brother's mark, the evidence demonstrates that "AB" almost never appears alone on any of Allen Brothers' products.

5

Therefore, a consumer will be likely to differentiate between Allen Brothers' products and those of AB Foods. *See Sullivan*, 385 F.3d at 777-78 (finding that the prominent display of different names on the marks reduces any likelihood of confusion); *Henri's Food Prods. Co.*, 717 F.2d at 355-56 (finding that the fact that one portion of a mark is less prominent than another portion does not mean that there is a likelihood of confusion with the prominent portion).

Second, the parties' respective "AB" marks are not visually similar. Allen Brothers' mark is a sharp, slanted "AB" with horizontal bars cutting through the letters and is usually displayed in blue. In contrast, AB Foods' mark is a curved, connected "AB" with no sharp or angular lines and is usually displayed in maroon and white. Although restaurant buyers or individual consumers will not have the opportunity to compare the marks side-by-side, after carefully examining the marks we find that they are so visually dissimilar that there is no likelihood of confusion as to the source of the parties' respective products.

Allen Brothers contends that a likelihood of confusion exists because the marks are aurally identical and, because Allen Brothers references "AB" in local and national radio advertisements, consumers could believe that those advertisements were related to AB Foods. It is true that "[a]ny visual distinctions between the parties' [respective marks] are irrelevant in the aural realm." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1116 (7th Cir. 1997). However, as is the case with Allen Brothers' catalogs, marketing materials, and shipping materials, Allen Brothers almost always references "AB" in radio advertisements in conjunction with the words "Allen Brothers." Further, although those radio advertisements direct consumers to visit "absteaks.com," that domain name directs consumers to Allen Brothers' Web site where the words "Allen Brothers" are predominantly displayed. Therefore, we find that no reasonable

6

consumer could confuse AB Foods' products for those of Allen Brothers. This factor favors AB Foods.

2. Similarity of the Products

For purposes of determining a likelihood of confusion, a closely-related product is one which could reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001). Here, it is undisputed that the parties sell similar meat products. Thus, this factor favors Allen Brothers.

3. Area and Manner of Concurrent Use

"The concurrent use factor 'focuses on the overlap of promotion, distribution, and sales of the parties' goods.'" *S Indus., Inc. v. JL Audio Inc.*, 29 F. Supp. 2d 878, 892 (N.D. Ill. 1998). Here, both parties market and sell meat products to restaurants and to individual consumers. Thus, because the parties are direct competitors, the court finds that there is concurrent use in this case. This factor favors Allen Brothers.

4. Degree of Care Likely to be Used by Consumers

"The degree of care factor seeks to distinguish how likely the relevant group of consumers is to distinguish between different products." *Id.* Thus, "where consumers are sophisticated, deliberate buyers, confusion is less likely." *Rust Env't*, 131 F.3d at 1217. As a general rule, "where the cost of the defendant's . . . product is high, the courts assume that purchasers are likely to be more discriminating that they might otherwise be." *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir. 1985). Here, Allen Brothers furnishes high-quality, gourmet meat products to fine-dining restaurants and to connoisseurs of gourmet foods. Allen

7

Brothers does not sell to grocery stores or to fast food chains. The cost of Allen Brothers' meat products is high. Specifically, of the ninety-six Allen Brothers invoices produced in this case, only one totaled less than $150. Even Allen Brothers' ground beef sells for $49.95 for six packages of one-pound portions. In light of this evidence, we must infer that Allen Brothers' customers are sophisticated buyers who exercise a high degree of care before purchasing Allen Brothers' products. *See Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1230 (7th Cir. 1993) ("In any event, we cannot agree that as a matter of law customers routinely purchase a $39.95 item without looking carefully at the product information."); *Knaack Mfg. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1001 (N.D. Ill. 1997) (finding that plaintiff had "failed to prove that customers are not likely to exercise care in purchasing a $49 to $79 vehicle cover"). This factor favors AB Foods.

5. Strength of the Plaintiff's Mark

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001). A strong mark has fame, uniqueness, and a volume of usage that gives it an edge in the marketplace. *Telemed Corp. v. Tel-Med Inc.*, 588 F.2d 213, 219 (7th Cir. 1978). Here, Allen Brothers contends that its "AB" mark is strong because (1) it is arbitrary and is thus automatically given trademark protection, and (2) Allen Brothers has used the mark for over 20 years in the marketplace. AB Foods counters that Allen Brothers' strong mark is its name, "Allen Brothers," and not "AB." We agree with AB Foods.

First, Allen Brothers' contention that its "AB" mark is arbitrary and thus automatically protected is without merit. In *Abercrombie & Fitch Co. v. Hunting World, Inc.*, Judge Friendly

8

articulated four categories of terms with respect to trademark law, arranged here in ascending order of the degree of protection afforded: (1) generic; (2) descriptive; (3) suggestive; and (4) fanciful or arbitrary.  537 F.2d 4, 9 (2d Cir. 1976).  However, even assuming, *arguendo*, that Allen Brothers' "AB" mark is arbitrary, classifying a mark as arbitrary does "not . . . automatically mean that the mark is entitled to strong protection."  *Sullivan*, 385 F.3d at 776.  "Judge Friendly proposed the continuum of generic, descriptive, suggestive, arbitrary, and fanciful marks as a heuristic, a means to guide thought rather than to replace statutory requirements."  *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001).  Further, "Judge Friendly's continuum is functional, and placement must be functional too."  *Id.* at 497.  Proof of a likelihood of confusion is still a statutory requirement under section 43 of the Lanham Act.  *Id.* at 496.

Here, we find that AB Foods' use of "AB" does not create a likelihood of confusion among consumers in the marketplace because we see no evidence that such consumers have come to identify Allen Brothers' products with "AB" alone.  As discussed above in relation to the similarity of the parties' respective marks, Allen Brothers almost always uses "AB" in conjunction with the words, "Allen Brothers."  Thus, we find that the potential strength of Allen Brothers' trademark lies in its name, "Allen Brothers," or in a mark that uses a combination of "AB" and "Allen Brothers," rather than in "AB" alone.  Therefore, although Allen Brothers' "AB" may be arbitrary in the sense that "AB" does not describe food products or services, it is not *legally* arbitrary because there is no evidence that it has retained distinctiveness as an identifier of Allen Brothers' products.  *See Id.* at 497.  Accordingly, we reject Allen Brothers' contention that it is entitled to trademark protection in "AB" as an arbitrary mark.

9

Similarly, Allen Brothers' contention that it is entitled to trademark protection in "AB" because it has used "AB" for 20 years in the marketplace is without merit because Allen Brothers almost always used and continues to use "AB" in conjunction with the words, "Allen Brothers." Thus, even if Allen Brothers has used some form of an "AB" mark for 20 years, Allen Brothers has failed to produce evidence demonstrating that consumers have come to identify Allen Brothers' products with "AB" alone. Therefore, AB Foods' use of "AB" is unlikely to cause confusion among consumers in the marketplace as to the source of AB Foods' products. This factor favors AB Foods.

6. Evidence of Actual Confusion

Evidence of actual confusion is one of the most important factors in a likelihood of confusion analysis. *Ty, Inc.*, 237 F.3d at 898. Although evidence of actual confusion is not required to show a likelihood of confusion, "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion." *Nike, Inc.*, 6 F.3d at 1231. Here, Allen Brothers concedes that it has no evidence of actual confusion among consumers between its "AB" mark and that of AB Foods or Agri Beef. This factor therefore favors AB Foods.

7. Intent of Defendant to Palm Off Its Goods as Those of Plaintiff

"[I]n the trademark infringement context, 'intent' refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else." *Meridian Mut. Ins. Co.*, 128 F.3d at 1120. Here, Allen Brothers contends that during Agri Beef's corporate reorganization Agri Beef chose the name AB Foods and an associated "AB" mark so that AB Foods could trade on the goodwill of Allen Brothers' name in the parties' markets, but the

evidence does not support such a conclusion. As Allen Brothers concedes, Agri Beef had used its "AB" mark for decades—even prior to Allen Brothers' initial use of "AB"—without conflict with Allen Brothers. Allen Brothers has presented no evidence other than speculation and conjecture that Agri Beef's or AB Foods' intent in adopting Agri Beef's "AB" mark for AB Foods was to palm off AB Foods' products as those of Allen Brothers. However, more is required of Allen Brothers in order to survive summary judgment. *See Rogers Whitmore's Auto. Servs. Inc. v. Lake County, Ill.*, 424 F.3d 659, 669 (7th Cir. 2005) (explaining that speculation or a scintilla of evidence will not suffice to defeat summary judgment). This factor favors AB Foods.

C.     *Conclusion on the Likelihood of Confusion Factors*

Allen Brothers has failed to produce evidence that, if believed by a trier of fact, would show that consumers are likely to be confused as to the source of AB Foods' products because of AB Foods' use of "AB." First, the marks are not similar as viewed by consumers in the marketplace. Second, Allen Brothers' customers are sophisticated buyers who exercise a high degree of care before purchasing Allen Brothers' products. Third, the potential strength of Allen Brothers' mark lies in its name, "Allen Brothers," or in "AB" when used in conjunction with "Allen Brothers," but not in "AB" alone. Fourth, Allen Brothers has produced *no* evidence of actual confusion. Finally, there is *no* evidence that AB Foods began using "AB" in an effort to pass off its products as those of Allen Brothers. Under these circumstances, we conclude that no rational trier of fact could find that AB Foods' use of "AB" causes a likelihood of confusion and AB Foods' motion for summary judgment must therefore be granted with respect to Count One, the Lanham Act claim, as well as Count Two, the common law claim.

## **CONCLUSION**

For the foregoing reasons, defendant AB Foods' motion for summary judgment [34] is granted with respect to both Counts One and Two of Allen Brothers' complaint. This case is terminated.


It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: February 6, 2008